IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE EMAIL ADDRESS **SAMUELBUCEY2022@GMAIL.COM,** WITHIN THE POSSESSION, CUSTODY, OR CONTROL OF GOOGLE LLC | Case No. 1:24-sw-576 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Jeremy T. Hoffman, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with the email address **samuelbucey2022@gmail.com** (the "**TARGET ACCOUNT**"), that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), a provider of electronic services and/or a remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.  I have been employed as a police officer with the Fairfax County Police Department ("FCPD") for over 23 years and have been duly sworn as a Task Force Officer ("TFO") with the

Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for over two years. I am currently assigned to the Criminal Intelligence Unit of the FCPD, and the ATF Falls Church II Field Office.

3. During the course of my employment as a Fairfax County Police detective and as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, I have been involved in numerous investigations involving violations of federal and state firearms laws. I have received training and have experience investigating violations of both local and federal firearms laws. Additionally, I have received training and have experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics investigations, white collar crimes, search warrant applications, and various other crimes.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1) (possession of a firearm after being convicted of a crime punishable by more than one year imprisonment) have been committed by Samuel Lee Bucey ("**BUCEY**"). There is also probable cause to search the information described in Attachment A for evidence, of these crimes as further described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

7. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## FACTUAL BASIS SUPPORTING PROBABLE CAUSE

A. Background on **BUCEY**

8. **BUCEY** has a lengthy criminal history spanning the period between 2005 and 2022 and has been convicted of multiple felonies, including firearm offenses. For instance, on or about August 16, 2013, **BUCEY** was sentenced to 3 years of incarceration (2 years and 6 months suspended), after pleading guilty to grand larceny in the Arlington County Circuit Court. On or about August 5, 2014, **BUCEY** was ordered to serve the remaining 2 years and 6 months of his sentence after the Court revoked his supervised probation. In addition, on or about August 13, 2020, **BUCEY** was sentenced to a total term of 28 months of incarceration after pleading guilty to two counts of attempted burglary in the Superior Court of the District of Columbia. Most recently, on April 21, 2022, **BUCEY** was convicted of committing credit card theft, grand larceny, and burglary in the Fairfax Circuit Court. On May 20, 2022, he was sentenced to a total term of imprisonment of 5 years, 3 years and 364 days suspended, with credit for time served.

9. According to records from the Fairfax County Adult Detention Center, **BUCEY** was most recently released from incarceration on or about May 27, 2022.

10. Prior to the date of the instant offense, which is described in further detail below, BUCEY was arrested in Fairfax County, Virginia, on May 29, 2024, for breaking the windows of vehicles at a hotel in Springfield, Virginia. When he was arrested on May 29, **BUCEY** was wearing a red t-shirt with black sleeves and a white lining running across the shoulders and down the sleeves of the shirt.

B.      Background on Investigation

11.     On the morning of June 8, 2024, FCPD officers and detectives responded to reports of a break-in into two law enforcement vehicles parked at two different hotels in the Eastern District of Virginia.

12.     Specifically, two marked police cruisers belonging to the Alachua County Sheriff's Office (which is located in Gainesville, Florida), were parked overnight at two hotels—the Courtyard Marriott hotel, located at 6710 Commerce Street, and the Hilton hotel, located at 6550 Loisdale Road, both in Springfield, Virginia, which is within the Eastern District of Virginia. The hotels are located approximately half a mile from each other. Each of the cruisers (hereinafter referred to as "CRUISER 1" and "CRUISER 2") was forcefully broken into in the early morning hours of June 8. From CRUISER 1, which was parked at the Courtyard Marriott, law enforcement equipment was stolen, including one Colt M4 .223 caliber semi-automatic rifle with a 12-inch barrel bearing serial number LE145493 (hereinafter, the "RIFLE"),[1] as well as handgun and rifle magazines. The owner of CRUISER 1 reported that the RIFLE was inside a black rifle bag and the magazines were stored inside a law enforcement tactical vest. From CRUISER 2, which was parked at the Hilton, additional law enforcement equipment was stolen, including an otherwise empty rifle bag containing .223 caliber ammunition.

---

[1] Based on my training and experience, I know that Colt firearms are not manufactured in Virginia. Having interviewed the Alachua County Sheriff's Office officers whose cruisers were broken into, there is probable cause to believe that the RIFLE is a "weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(1)(3)(A).

4

13. Responding FCPD officers obtained and reviewed surveillance footage from the Hilton, which showed that at approximately 2:40 a.m. on June 8, 2024, a subject rode what appeared to be a rental bicycle through the Hilton's parking lot. The subject rode the bicycle through and around the law enforcement vehicles that were parked there, including CRUISER 2. The subject appeared to be a black male in his late 20s or 30s with a beard and wearing a baseball cap and a shirt with a white stripe going down the shoulders. In the video, the face of the subject was visible.

14. The surveillance video further showed the same subject returning to the Hilton parking lot at approximately 4:10 a.m. In the video, the subject can be seen walking around and between the law enforcement vehicles that were parked there, including CRUISER 2, and shining a flashlight inside CRUISER 2. At approximately 4:20 a.m., the subject can be seen breaking one of CRUISER 2's windows and carrying away objects from inside the vehicle.

15. FCPD officers on scene sent a screenshot of the subject's face as captured by the surveillance video to other FCPD officers who were known to patrol the area surrounding the hotels. One of the officers recognized the subject as **BUCEY** based on previous interactions the officer had had with him. **BUCEY**, a black male in his late 30s who has a beard, matched the description of the subject seen on the Hilton surveillance video.

16. Responding FCPD officers also canvassed the areas surrounding each of the hotels. At the Courtyard Marriott, officers located a dumpster in the parking lot where CRUISER 1 was parked. Inside the dumpster, officers found law enforcement equipment that had been taken from CRUISER 1, including the law enforcement tactical vest, although the magazines that had been stored in it were missing. At the Hilton, officers located a fenced utility area containing a propane tank in the parking lot where CRUISER 2 was parked. Inside the fenced utility area, officers found

law enforcement equipment that had been taken from CRUISER 2, including the empty rifle bag, although the ammunition that had been inside the bag was also missing.

17. Law enforcement officers also obtained surveillance footage from the Metro Transit Police Department ("Metro Transit") that showed **BUCEY** arriving at the Franconia Springfield Metro Station, which is approximately one mile and a half from the Courtyard Marriott and Hilton hotels, at approximately 5:42 a.m. In the Metro Transit surveillance video, **BUCEY** can be seen with a Capital Bikeshare bicycle holding a black rifle bag identical to the one containing the RIFLE that had been stolen from CRUISER 1. The surveillance video shows BUCEY boarding a Metro railcar train at 6:50 a.m., shortly after the station opened. Additional surveillance footage obtained from Metro Transit showed **BUCEY** exiting the Metro railcar train at the Minnesota Avenue Station, in Washington, D.C., at approximately 8:03 a.m. In the video, **BUCEY** can be seen still carrying the black rifle bag.

18. Based on the aforementioned information, on June 8, 2024, FCPD obtained state arrest warrants charging **BUCEY** with numerous offenses, including the theft of the RIFLE. **BUCEY** was arrested that afternoon in the District of Columbia. While in custody, FCPD detectives interviewed **BUCEY** after he waived his Miranda rights. During the interview, an FCPD detective explained the charges filed against **BUCEY** and told **BUCEY** that law enforcement needed the RIFLE back. In response, **BUCEY** stated, "How would I do that?" An interviewing detective asked **BUCEY** if the RIFLE was at his mother's house, to which **BUCEY** responded, "No, it's not there." **BUCEY** went on to say that he could call someone about getting the RIFLE back. **BUCEY** then agreed to place a recorded phone call in the presence of law enforcement from his cell phone to the subject to whom he sold the RIFLE. During the phone call, **BUCEY** told the subject on the phone that he needed the RIFLE back. The subject referred to

**BUCEY** as "Six." **BUCEY** was cooperative with the detectives in trying to locate the RIFLE and get it back, but ultimately the RIFLE was not recovered.

19. When **BUCEY** was arrested on June 8, 2024, his cell phone was seized incident to the arrest. FCPD obtained a state search warrant and searched **BUCEY**'s cell phone. A review of the cell phone extraction from **BUCEY**'s cell phone revealed that on the morning of June 8, 2024, **BUCEY** sent a text message to one of his contacts reading: "This Six I got something for you. Chopper [gun emoji] [gun emoji] machine gun pressure $1000." Based on my training and experience, I know that the term "chopper" is slang used to refer to a machine gun.

20. On July 24, 2024, **BUCEY**'s charges in Fairfax County were dismissed to allow for **BUCEY**'s federal prosecution. Accordingly, on July 25, 2024, **BUCEY** made his initial appearance in the United States District Court for the Eastern District of Virginia pursuant to a criminal complaint charging him with violating 18 U.S.C. § 922(g)(1). During a preliminary hearing, the Court found probable cause to believe that **BUCEY** committed the charged offense.

C. Identification of the **TARGET ACCOUNT**

21. BUCEY's cell phone, which has the phone number (202) 553-9682 and the international mobile equipment identity ("IMEI") 356015413520899, has an Android operating system that I know prompts users to log into a Google account early in the setup process. A review of the cell phone extraction revealed that the Google account **samuelbucey2022@gmail.com** (i.e., the **TARGET ACCOUNT**) was linked to the phone. I submit that there is probable cause to believe that, because the **TARGET ACCOUNT** was linked to **BUCEY**'s phone and because it contains **BUCEY**'s full name, the **TARGET ACCOUNT** belongs to **BUCEY**.

22. From my training and experience, I know that it is common for individuals to carry their cell phones on their person or within close proximity at most times. Indeed, **BUCEY** was

7

carrying his cell phone at the time of his arrest, less than 12 hours after CRUISER 1 and CRUISER 2 were broken into. Moreover, prior to his arrest, **BUCEY** used his cell phone to send a text message to one of his contacts attempting to sell a firearm, which I submit was the RIFLE. Based on the prominent ownership and usage of cellular devices in current society, and in light of **BUCEY**'s use of the phone, that was logged into **TARGET ACCOUNT,** within hours of the offense committed, it is likely that **BUCEY** brought the cellular phone, logged into the **TARGET ACCOUNT**, to the scene of the offense.

23.  Based on my training and experience, as well as my knowledge of technology regarding Google services, there is probable cause to believe that the **TARGET ACCOUNT** contains evidence of the criminal activity of **BUCEY**. Specifically, based on my training and experience, and all of the facts and opinions set forth in this affidavit, I believe that the **TARGET ACCOUNT** will contain location information that would corroborate that **BUCEY** was at the scene of the offense on June 8, 2024.

## BACKGROUND CONCERNING GOOGLE AND RELEVANT TECHNOLOGY

24.  Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service

called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

25. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services.

26. Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

27. Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it

conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

28.     Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

29.     Location data as that described above can assist investigators in understanding the chronological and geographic context of the email account's access and use relating to the crimes under investigation. This geographic and timeline information may tend either to inculpate or exculpate the account owner. Additionally, information stored at the user's account may further

indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).

30. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

## **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

31. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government copies of the records and other information particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

[Continued on next page]

## CONCLUSION

32. Based on the aforementioned information, I respectfully submit that probable cause exists to believe **BUCEY** has committed a violation of 18 U.S.C. 922(g)(1), and that evidence of such crime, as described in Attachment B, will be located in the **TARGET ACCOUNT**, described in Attachment A.

33. Based on the foregoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*Jeremy Hoffman*
Jeremy T. Hoffman
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to me in accordance with Fed. R. Crim. P. 4.1
by telephone on August 13, 2024

Digitally signed by Ivan Davis
Date: 2024.08.13 16:20:19 -04'00'

Honorable Ivan D. Davis
United States Magistrate Judge

## ATTACHMENT A

**Property to Be Searched**

This warrant is directed to Google LLC ("Google"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California, and applies to GPS, Wifi, Bluetooth, or other sourced location history data generated from any devices associated with the following Google account that reported a location during the indicated timeframes below:

| Google Account Name | Date | Time (EDT) |
|---|---|---|
| **Samuelbucey2022@gmail.com** | 6/7/2024 | 12:00 a.m. to 11:59 p.m. |
| | 6/8/2024 | 12:00 a.m. to 11:59 p.m. |

## ATTACHMENT B

## Particular Things to be Seized

I.    **Information to be disclosed by Google**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information for the dates listed in Attachment A:

    a.    All location history data or information—including timestamp, coordinates, display radius, data source, and business check-in information, if available—generated from any devices associated with the accounts listed in Attachment A that reported a location during the timeframes set forth in Attachment A;

    b.    Any stored information, to include geo-location or IP address information, pertaining to Google Maps for any devices associated with the accounts listed in Attachment A that reported a location during the timeframes set forth in Attachment A;

    c.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

        1.    Names (including subscriber names, user names, and screen names);
        2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);
        3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;
        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;
        5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

      6. Length of service (including start date and creation IP) and types of service utilized;

      7. Means and source of payment (including any credit card or bank account number); and

      8. Change history.

    d. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers; and

    e. Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

Google is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant, via United States mail, courier, or email to the following law enforcement agent:

Task Force Officer Jeremy T. Hoffman
Bureau of Alcohol, Tobacco, Firearms, and Explosives
Falls Church Field Office
7799 Leesburg Pike, Suite 1050N
Falls Church, Virginia 22043
Telephone: 703-223-2416
Email: Jeremy.hoffman@fairfaxcounty.gov

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 922(g)(1) involving **SAMUEL BUCEY** on June 8, 2024, including, for the account listed on Attachment A and for the accompanying dates, information pertaining to the following matters:

    a. Evidence regarding the geolocation of the Account;

    b. Evidence regarding the geographic movements of the Account;

    c.    Information reflecting the use of mapping applications for directions to/and from the location of the crime under investigation; and

    d.    Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner.

This warrant authorizes a review of electronically stored information, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google, and my official title is _____. I am a custodian of records for Google. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of Google; and

    c.    such records were made by Google as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date                                    Signature